MATTIONI, LTD
BY:  George R. Zacharkow
      Stephen J. Galati, Esquire
      Attorney I.D. Nos. GZ7099, SG0492
1316 Kings Highway
Swedesboro, NJ 08085
Ph. 856-241-9779
Fax.: 856-241-9989
E-mail: gzacharkow@mattioni.com
         sgalati@mattioni.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**
(Camden Vicinage)

---

MONJASA A/S
Strevelinsvej 34
DK 7000 Fredericia, Denmark
                Plaintiff                      C.A. No. _____

v.

M/V CLIPPER BELLE, her engines,
machinery, appurtenances, etc. *in rem*,
                Defendant

---

## VERIFIED COMPLAINT IN *IN REM*

Plaintiff Monjasa A/S by and through its attorneys, hereby files its Verified Complaint

against Defendant M/V CLIPPER BELLE, and in support thereof represents as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction under the provisions of 28 U.S.C. Section 1333, as this is an

admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil

Procedure and the specific procedures of said Rules relative to admiralty actions, and under the

Commercial Instruments and Maritime Liens Act, 46 U.S.C. § 31341 *et seq.*

2.      Venue is proper in this District because the M/V CLIPPER BELLE (IMO No. 9615119) is now, or soon will be, within the District.

## IDENTITY OF PARTIES

3.      At all material times, Plaintiff Monjasa A/S ("Monjasa" or "Plaintiff") was a foreign corporation duly organized and existing under the law, with an office and principal place of business as set forth in the caption, and was engaged in the business of marketing and selling marine, aviation, and land fuel products and related services on a worldwide basis.

4.      At all material times, the M/V CLIPPER BELLE ("Vessel") was and still is a Panama-flagged, bulk carrier that engages in the worldwide transportation of cargo.

## FACTS

5.      On or about May 13, 2013,  at the request of STX Corporation Co., Ltd. and/or others with authority, and in reliance upon the Vessel's credit, Plaintiff entered into a contract to supply bunkers (marine fuel) to the Vessel at Antwerp, Belgium.  This contract called for the supply of 450 mts of lfo-380cst RMG380 3.5%, 100 mts of lfo-380 cst RMG380 1.0%, and 30 mts MGO DMA 0.1%. See Bunker Confirmation 138891, contained within Exhibit A.  The Bunker Confirmation incorporates Plaintiff's General Terms and Conditions dated January 2012.

6.      On or about May 19, 2013 Plaintiff delivered fuel referenced in Bunker Confirmation 138891 to the Vessel at Antwerp/Kallo, Belgium. See Bunker Delivery Notes contained within Exhibit C.

7.      On May 23, 2013 Plaintiff issued invoice 47784 for the fuel delivered to the Vessel at Antwerp/Kallo, Belgium on or about May 19, 2013, pursuant to Bunker Confirmation 138891. This invoice is in the amount of USD$321,012.54  According to this invoice, payment was to be instructed on later than June 16, 2013. A copy of this invoice is contained within Exhibit D.

8.      Despite due demand, Plaintiff has not been paid the full amount due and owing for the fuel sold and referenced in Invoice 47784; nor has it been provided with assurance of payment.

9.      On or about May 21, 2013,  at the request of STX Corporation Co., Ltd. and/or others with authority, and in reliance upon the Vessel's credit, Plaintiff entered into a contract to supply bunkers (marine fuel) to the Vessel at Antwerp, Belgium.  This contract called for the supply of 50 mts of lfo-380cst RMG380 3.5%.  See Bunker Confirmation 139247, contained within Exhibit A.  The Bunker Confirmation incorporates Plaintiff's General Terms and Conditions dated January 2012.

10.     On or about May 22, 2013 Plaintiff delivered fuel referenced in Bunker Confirmation 139247 to the Vessel at Antwerp/Kallo, Belgium. See Bunker Delivery Notes contained within Exhibit C.

11.     On June 3, 2013 Plaintiff issued invoice 47973 for the fuel delivered to the Vessel at Antwerp/Kallo, Belgium on or about May 21, 2013, pursuant to Bunker Confirmation 139247. This invoice is in the amount of $30,631.48.  According to this invoice, payment was to be instructed on later than June 18, 2013. A copy of this invoice is contained within Exhibit D.

12.     Despite due demand, Plaintiff has not been paid the full amount due and owing for the fuel sold and referenced in Invoice 47973; nor has it been provided with assurance of payment.

13.     Pursuant to  the terms of the sales, past-due invoice amounts accrue interest at the rate of 2 percent per month.

14.     Plaintiff's General Terms and Conditions which govern all bunker supply contracts it enters, including the subject contracts herein, provide this dispute is governed by the Maritime Law of the United States.  It further provides that, Plaintiffs have a maritime lien on the vessel and that all claims between Plaintiff and the vessel are subject to arbitration in New York, but

"without prejudice to Plaintiff's right to use any and all legal process to obtain security for its claims. . . . "

15.     As set forth in the Invoices, Defendants currently owe Plaintiff the sum of $351,644.02 (USD), together with interest, costs and attorneys' fees.

16.     Defendant M/V CLIPPER BELLE is liable *in rem* for breach of the contracts.

17.     As such, Defendant owes Plaintiff $351,644.02, plus interest, costs and attorneys' fees.

18.     By reason of the aforesaid,  and by virtue of Plaintiff's furnishing of "necessaries" to the vessel within the meaning of the Federal Maritime Lien Act, 46 U.S.C. § 31342, *et. seq*, on the order of a charterer of the vessel, Plaintiff has a maritime lien on the Vessel for the full amount of its claim.

19.     By reason of the aforesaid, Plaintiff  has a lien on the vessel pursuant to the terms of the contracts.

## COUNT ONE
### (Breach of Maritime Contracts)

20.     Plaintiff  incorporates the averments contained in paragraphs 1 - 19, inclusive, with the same force and effect as if fully set forth herein.

21.     Plaintiff entered into the aforementioned sales contracts with Defendant as described above.

22.     Plaintiff delivered the quantity of bunkers set forth in Exhibit C to the Vessel and has fully performed its obligations under the contracts.

23.     Defendant has failed to pay for the bunkers that were delivered to the Vessel and, therefore, has materially breached the contracts.

24.     As a result of Defendant's breach, Plaintiff has sustained damages in the amount of $351,644.02, plus interest, costs and attorneys' fees.

WHEREFORE, Plaintiff, Monjasa A/S,   prays that:

(a)     Process of arrest in due form of law according to the practice of this Honorable Court in causes of admiralty and maritime claims may issue against the vessel, her engines, boilers, etc. as provided in the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure; that all persons having or claiming any interest therein be cited to appear and answer, under oath, all and singular, the matters herein; that judgment be entered in favor of plaintiff for the damages as aforesaid, with interest, costs and attorney's fees; that the said vessel be condemned and sold and the proceeds of said sale be brought into this Court and applied to pay plaintiff the sums found due it.

(b)     Process in due form of law according to the practice of this Honorable Court may issue against defendants citing them to appear and answer, under oath, all and singular the matters herein.

(c)     Judgment be entered in favor of plaintiff and against defendant for the damages as aforesaid, with interest, costs and attorney's fees.

(d)     The Court grant such other and further relief to plaintiff as in law and justice it may be entitled to receive.

MATTIONI, LTD.

By: _____
George R. Zacharkow, Esquire
Stephen J. Galati, Esquire
*Attorneys for Plaintiff*

Dated: June 20, 2013
OF COUNSEL:
Robert S. Glenn, Jr.
Ellis, Painter, Ratterree & Adams LLP

## <u>VERIFICATION BY WAY OF UNSWORN DECLARATION</u>

I, George R. Zacharkow hereby declare as follows:

I am a member of the law firm of Mattioni, Ltd., counsel for the Plaintiff, in this matter, and I make this declaration pursuant to and in compliance with Supplemental Rule C and the local admiralty rules of the United States District Court for the  District of New Jersey.

Plaintiff is a foreign business entity and there are no authorized representatives of Plaintiff readily available in the District to make this verification, and due to time constraints Plaintiff is unable to execute this verification; I am authorized to make this Declaration on behalf of Plaintiff; the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief; the sources of my information and the grounds for my belief are documents in the possession of my firm and reports made to me by officers, employees, representatives and/or agents of Plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 20, 2013                          By: _____

GEORGE R. ZACHARKOW

# EXHIBIT A



## BUNKER CONFIRMATION
No 138891

To   :  STX Corporation Co., Ltd                        Date 13-05-2013
**Att**  :  **Yoon-Jin Hwang**

With reference to our correspondance, we hereby confirm your order as follows:

Vessel      :  CLIPPER BELLE (call sign: 3FBM3 / imo: 9615119)
Port        :  Antwerp
Delivery Date :  19-05-2013 - 20-05-2013

For Account  :  m/v CLIPPER BELLE master and/or owners and/or charterers and/or managers and/or operators and/or STX Corporation Co., Ltd

Details     :

| Product | Quantity | | Price/Unit |
|---|---|---|---|
| Ifo-380cst RMG380 3,5% | 450 Mts | USD | 580,00  /  Mts.fob |
| Ifo-380cst RMG380 1,0% | 100 Mts | USD | 610,00  /  Mts.fob |
| MGO DMA 0,1% | 30 Mts | USD | 826,00  /  Mts.fob |

Payment   :  30 days from delivery date

Agent     :  Central Shipping Belgium N.V | Tel: 0032 354 00 333

Monjasa Group Terms & Conditions Jan. 2012 to apply. Copy available on our website: www.monjasa.com

**We thank you for your support**

Best regards,

**Monjasa A/S**
Casper Frederiksen

Direct Email   :  cf@monjasa.com
Direct Phone  :  +45 76 317 348
Mobile Phone  :  +45 26 859 203
Yahoo Msg   :  monjasacasper
MSN Msg    :  frederiksen@monjasa.dk

---

Monjasa A/S                                Phone :   +45 70 260 230
Strevelinsvej 34                           Fax   :   +45 70 260 233
7000 Fredericia, DK         VAT no. 26480531         Email :  denmark@monjasa.com



# BUNKER CONFIRMATION
No 139247

To  :  STX Corporation Co., Ltd                                    Date 21-05-2013
**Att  :  Yoon-Jin Hwang**

With reference to our correspondance, we hereby confirm your order as follows:

Vessel          :  CLIPPER BELLE (call sign: 3FBM3 / imo: 9615119)
Port            :  Antwerp
Delivery Date   :  21-05-2013 - 22-05-2013

For Account  :  m/v CLIPPER BELLE master and/or owners and/or charterers and/or managers and/or
                operators and/or STX Corporation Co., Ltd

Details  :  | **Product** | **Quantity** | | **Price/Unit** |
|---|---|---|---|
| Ifo-380cst RMG380 3,5% | 50 Mts | USD | 609,00  /  Mts.fob |

Payment  :  30 days from delivery date

Agent  :  Central Shipping Belgium N.V | Tel: 0032 354 00 333

Monjasa Group Terms & Conditions Jan. 2012 to apply. Copy available on our website: www.monjasa.com

**We thank you for your support**

Best regards,

**Monjasa A/S**
Casper Frederiksen

Direct Email   :  cf@monjasa.com
Direct Phone   :  +45 76 317 348
Mobile Phone   :  +45 26 859 203
Yahoo Msg      :  monjasacasper
MSN Msg        :  frederiksen@monjasa.dk

---

# EXHIBIT B

# General Terms and Conditions Jan. 2012
Monjasa Group

**Preamble**

These General Terms and Conditions shall apply to all deliveries contracted for unless the Sellers expressly confirm otherwise in the Bunker Confirmation. Each delivery shall constitute a separate contract.

## 1. Definitions

Throughout this Contract, except where the context otherwise requires, the following definitions shall be applied:

"*Marine Fuels*" means products, derived from crude oil, delivered or to be delivered to the Vessel.

"*Sellers*" means the party contracting to sell and deliver Marine Fuels, and

"*Buyers*" means the party contracting to purchase, take delivery and pay for the Marine Fuels.

"*Bunker Tanker*" means bunker barge or tanker or tank truck supplying Marine Fuels to the Vessel.

## 2. Grades/Quality

a) The Buyers shall have the sole responsibility for the nomination of the grades of Marine Fuels fit for use by the Vessel.

b) The Sellers warrant that the Marine Fuels shall be of a homogeneous and stable nature, shall comply with the grades nominated by the Buyers and be of a quality widely accepted in the industry. Unless otherwise agreed in the Bunker Confirmation, the Marine Fuels will comply with ISO Standard 8217 (E):2005

## 3. Quantities/Measurements

a) Subject to the provisions of sub-clause 6(c) and Clause 9 hereunder the quantities of Marine Fuels delivered shall be determined from the official gauge or meter of the Bunker Tanker effecting delivery, or in case of delivery ex wharf, of the shore-meter.

b) The Buyers and the Sellers shall both have the right to be present or represented when such measurements are taken and shall be given sufficient information and access to the official gauge or meter of the Bunker Tanker or shore-meter and relevant documentation to verify the volume delivered.

c) The Marine Fuels to be delivered under this Contract shall be measured and calculated in accordance with the ISO-ASTM-API-IP Petroleum Measurement Tables.

## 4. Sampling

a) The Sellers shall arrange for a representative sample of each grade of Marine Fuels to be drawn throughout the entire bunkering operation and that sample shall be thoroughly mixed and carefully divided into four (4) identical samples. The sampling shall be performed in the presence of both the Sellers and the Buyers or their respective representatives. The absence of the Buyers or their representatives shall not prejudice the validity of the samples taken.

b) The sample shall be drawn at a point, to be mutually agreed between the Sellers and the Buyers or their respective representatives, closest possible to the Bunker Tanker manifold.

c) The sample shall be drawn using a mutually accepted sampling device which shall be constructed, secured and sealed in such a way so as to prevent the sampling device and the sample being tampered with throughout the transfer period.

d) The four (4) identical samples referred to in subclause 4(a) shall be securely sealed and provided with labels showing the Vessel's name, identity of delivery facility, product name, delivery date and place and point of sampling and seal number, authenticated with the Vessel's stamp and signed by the Sellers' representative and the Master of the Vessel or his authorised representative.

e) Two (2) samples shall be retained by the Sellers for minimum forty five (45) days after delivery of the Marine Fuels to the Vessel or, on being requested in writing by the Buyers, for as long as the Buyers may reasonably require, and the other two (2) samples shall be retained by the Vessel.

f) If the quantity is delivered by more than one Bunker Tanker, the sampling procedure shall be repeated as outlined in this Clause 4.

g) In the event of a dispute relating to the quality of the marine fuel supplied, the samples drawn by the Bunker Tanker only under this clause shall be conclusive and only the results of testing of samples drawn under this section shall be admissible in any proceedings to prove the quality of the marine fuel provided.

## 5. Delivery

a) Delivery of the Marine Fuels shall be made day and night, Sundays and holidays included, at the port or place of delivery, subject always to the custom of that port or place.

b) Buyers shall at the time the order is placed designate a date or range of dates for delivery of the Marine Fuels, which dates will be confirmed in the Bunker Confirmation for delivery of the Marine Fuels.

i) In the event the vessel arrives earlier than 24 hours prior to the agreed date or range of dates or later than 24 hours after the agreed date or range of dates, Buyer agrees to an adjustment in price to reflect any increase in the relevant Platts publications, which may be obtained from the Seller upon request.

Monjasa Group
Strevelinsvej 34
DK-7000 Fredericia
www.monjasa.com

Tel:  +45 70 260 230
Fax: +45 70 230 233
denmark@monjasa.com



**MⓄNJASA**

General Terms and Conditions
Monjasa Group

ii)   Should Buyer elect to cancel the order, Buyer shall pay a cancellation fee equal to 5 % of the order price.

c)   The Buyers, or their agents at the port or place of delivery, shall give the Sellers or their representatives at the port or place of delivery, 72 and 48 hours approximate and 24 hours definite notice of the Vessel's arrival and the location and time at which deliveries are required.

d)   The Sellers shall:

i)   be in possession of all permits required to comply with all relevant regulations pertaining to delivery of Marine Fuels at the port or place of delivery, and;

ii)   subject to local laws, render all necessary assistance which may be reasonably required to make connections and disconnections between the delivery hose(s) and the Vessel's bunker manifold.

e)   The Buyers shall be responsible for making all connections and disconnections between the delivery hose(s) and the Vessel's bunker manifold and to ensure that the hose(s) are properly connected to the Vessel's bunker manifold prior to the commencement of delivery.

f)   Seller shall have no responsibility for detention or demurrage incurred by Buyer or to Buyer's Vessel caused by delays in the Bunker Tanker arriving on station due to bad weather or bad visibility.

g)   The Buyers shall ensure that the Vessel is in possession of all certificates required to comply with all relevant regulations pertaining to delivery of the Marine Fuels at the port or place of delivery and that the Master of the Vessel shall:

i)   advise the Sellers in writing, prior to delivery, of the maximum allowable pumping rate and pressure and agree on communication and emergency shut-down procedures;

ii)   notify the Sellers in writing prior to delivery, of any special conditions, difficulties, peculiarities, deficiencies or defects in respect of and particular to the Vessel which might adversely affect the delivery of the Marine Fuels, and;

iii)   provide a free side to receive the Marine Fuels and render all necessary assistance which may reasonably be required to moor or unmoor the Bunker Tanker, as applicable.

**6.   Documentation**

a)   Before commencement of delivery the Sellers shall without obligation endeavour to present a bunker requisition form or similar document, duly signed by the Sellers or their representative, which shall contain the quantities to be delivered and all information required in accordance with the Bunker Confirmation or any subsequent amendments thereof, including, in particular, the values for:

- viscosity
- density
- sulphur content
- flash point

In addition, and if available, similar information shall be provided for vanadium, ash content, water content and pour point.

b)   Once the delivery is completed and quantities measured, a receipt shall be signed and stamped by the Master of the Vessel or his authorised representative, and returned to the Sellers, or their representative, as acknowledgement of the actual volume only and a duplicate copy shall be retained by the Master of the Vessel. This receipt shall contain the following minimum information which is warranted by the Sellers:

- delivered quantity in volume units
- density in kg/m3 at 15o C as per ISO 3675
- flash point
- sulphur content in % m/m as per ISO 8754
- viscosity

c)   In the event the Master of the Vessel is not satisfied with the sampling, quality, quantity or any other matter concerning the Marine Fuels or their delivery, he shall take immediate phone contact to Seller's 24/7 phone number stated in the lower right footer of the Bunker Confirmation or to Buyer, whom must take immediate action on the complaints to solve the issue raised by the Master of the Vessel. Verification of the information provided under sub-clause 6(b) may later be obtained by analysis of the Vessel's retained sample.

d)   Buyer warrants that it is authorized by the Vessel's owners/operators to order the marine fuels delivered to the Vessel and that it has provided a copy of these terms and conditions to the Vessel's owner and/or Master.

e)   Buyer further warrants that by receiving the marine fuel and signing the Bunker Receipt, the Master acknowledges the vessel is bound by the terms and conditions contained herein.

**7.   Price**

a)   The price of the Marine Fuels shall be in the amount expressed per unit and in the currency stated in the Bunker Confirmation for each grade of Marine Fuels delivered into the Vessel's tanks free delivered/ex wharf as applicable and stated in the Bunker Confirmation. In the event the price is quoted in volume units, conversion to standard volume shall be at 60 degrees Fahrenheit or at fifteen (15) degrees Celsius.

b)   Any and all additional charges, if applicable, shall be specified in the Sellers' quotation and in the Bunker Confirmation and shall include but not be limited to:

i)   Wharfage charges, barging charges or other similar charges;

ii)   Mooring charges or port dues incurred by the Sellers which are for Buyers' account, and;

Monjasa Group
Strevelinsvej 34
DK-7000 Fredericia
www.monjasa.com

Tel:  +45 70 260 230
Fax: +45 70 230 233
denmark@monjasa.com

Page 2 of 5



**MONJASA**

iii)   Duties, taxes, charges or other costs in the country where delivery takes place, for which the Sellers are accountable but which are for the Buyers' account.

**8.   Payment**

a)   Payment for the Marine Fuels shall be made by the Buyers as per stated in the Bunker Confirmation, after the completion of delivery. In the event payment has been made in advance of delivery, same shall be adjusted on the basis of the actual quantities of Marine Fuels delivered and additional payment and/or refund shall be made within thirty (30) days after the completion of delivery. Should the Buyer appear to be in financial difficulty or unable to meet its obligations to other creditors as they become due, Seller on written notice to Buyer may accelerate the payment date hereunder in which case payment is immediately due. In consideration of this acceleration, Buyer is entitled to a credit against the principal amount due of 2% per month (prorated over the 30 days) for every day the payment is early.

b)   Payment shall be made in full, without set-off, counterclaim, deduction and/or discount, free of bank charges.

c)   Payment shall be deemed to have been made on the date the payment is credited to the counter of the bank designated by the Sellers. If payment falls on a non-business day, then payment shall be made on or before the business day nearest to the due date. If the preceding and succeeding business day are equally near to the due date, then payment shall be made on or before the preceding business day.

d)   Any delay in payment and/or refund shall entitle either party to interest at the rate of two (2) per cent. per month or any part thereof. Any payments made by Buyer and received by Seller shall be credited first against any interest owed under this section after which the balance of the payment, if any, shall be credited against the principal debt.

e)   In the event of non-payment, the Sellers reserve the right to pursue all legal remedies available to recover the amount owed. The Sellers shall have a maritime lien on the vessel identified by it's IMO number until payment and interest has been received by the Sellers. 'No-Lien-Stamps' or -remarks in any form or wording on Bunker Delivery Receipt(s) shall be invalid and of no effect, and shall in no way impair Seller's lien or discharge the vessel's responsibility for debts under this agreement.

**9.   Claims**

a)   Quantity Claims:

i)   The Bunker Tanker's measurements of the quantity delivered to Buyer shall be presumed accurate, and shall be final and binding on Buyer absent proof by Buyer that the measurements were inaccurately performed, calculated or recorded. Buyer's Vessel's measurements alone are insufficient to rebut this presumption.

ii)   Any dispute as to the accuracy of the measurements of the quantity delivered must be notified by phone to Sellers on their 24/7 number stated in the lower right footer of the Bunker Confirmation at the time of delivery and before signing the delivery receipt or a letter of protest. Any claim as to short delivery shall be presented by the Buyers in writing within (24) hours from the time of delivery together with all documents supporting Buyer's claim, failing which any such claim shall be waived and barred.

iii)   The Buyers shall be charged for all proven additional expenses incurred by the Sellers in connection with the Buyers' failure to take delivery of the full quantity of the Marine Fuels ordered by the Buyers.

b)   Quality Claims:

i)   Any claim as to the quality of the Marine Fuels must be notified in writing promptly after the circumstances giving rise to such claim have been discovered. If the Buyers do not notify the Sellers of any such claim within fifteen (15) days of the date of delivery, such claim shall be deemed to be waived and barred.

ii)   In the event a claim is raised pursuant to sub-clause 9(b)(i), the parties hereto shall have the quality of the Marine Fuels analysed by a mutually agreed, qualified and independent international recognized laboratory. The Sellers shall suggest minimum 2 (two) such laboratories, and Buyer shall choose one laboratory for a final and binding test. The Sellers shall provide the laboratory with one of the samples retained by them as per sub-clause 4(e). The analysis shall be established by tests in accordance with those specified under ISO Standard 8217(E):2005 or equivalent. Unless otherwise agreed the expenses of the analysis shall be for the account of the party whose claim is found wrong by the analysis.

c)   Delay Claims:

In the event of any delay resulting from:

i)   the Buyers' failure to give proper notices and/or to comply with the notices given pursuant to sub-clause 5(c) and/or the Buyers' Vessel failing to receive Marine Fuels at the pumping rate referred to in sub-clause 5(g)(i) or;

ii)   the Sellers' failure to commence delivery of the Marine Fuels promptly in accordance with the Buyers' required delivery time as notified pursuant to sub-clause 5(c), except as provided in clause 5(f), and/or the Sellers' failure to deliver the Marine Fuels in accordance with the minimum hourly pumping rate referred to in the Bunker Confirmation,

then the party suffering such delay shall be entitled to compensation from the other party for such delay.

Monjasa Group
Strevelinsvej 34
DK-7000 Fredericia
www.monjasa.com

Tel:  +45 70 260 230
Fax: +45 70 230 233
denmark@monjasa.com

Page 3 of 5



**MONJASA**

General Terms and Conditions
Monjasa Group

**d)** Neither party hereto shall be liable for indirect or consequential loss and/or damage arising from this Contract.

### 10. Risk/Title

Risk of the Marine Fuels shall pass to the Buyers once the Marine Fuels have passed the Sellers' flange connecting the Vessel's bunker manifold with the delivery facilities provided by the Sellers. Title to the Marine Fuels shall pass to the Buyers upon payment for the value of the Marine Fuels delivered, pursuant to the terms of Clause 8 hereof. Until such time as payment is made, on behalf of themselves and the Vessel, the Buyers agree that they are in possession of the Marine Fuels solely as Bailee for the Sellers. If, prior to payment, the Sellers' Marine Fuels are commingled with other marine fuels on board the Vessel, title to the Marine Fuels shall remain with the Sellers corresponding to the quantity of the Marine Fuels delivered. The above is without prejudice to such other rights as the Sellers may have under the laws of the governing jurisdiction against the Buyers or the Vessel in the event of non-payment.

### 11. Termination

Without prejudice to accrued rights hereunder, the Seller shall be entitled to terminate this Contract in the event of:

**a)** any application being made or any proceedings being commenced, or any order or judgement being given by any court, for

   **i)** the liquidation, winding up, bankruptcy, insolvency, dissolution, administration or re-organisation or similar, or

   **ii)** the appointment of a receiver, liquidator, trustee, administrator, administrative receiver or similar functionary of the Buyer of all or a substantial part of its assets (otherwise than for the purpose of a reconstruction or amalgamation);

**b)** the Buyer or any of its affiliates failing to pay its debts as they become due or suspending payment of its financial obligations, ceasing to carry on business, or compounding or making any special arrangement with its creditors, or;

**c)** any act being done or event occurring which, under the applicable law thereof, has a substantially similar effect to any of the said acts or events described above.

### 12. Indemnity

**a)** Without prejudice to any other claims arising hereunder or in connection herewith and notwithstanding the provisions of sub-clause 9(d), if loss is suffered or a liability is incurred by either party hereto as a direct result of compliance with directions given by the other party, during or for the purposes of the parties' obligations hereunder, then the injured party is to be indemnified by the other in respect of such loss or liability.

**b)** Where claims arise under sub-clause 9(c) and subclause 12(a), compensation payable in accordance with sub-clause 9(c) shall be taken into account in assessing sums payable under sub-clause 12(a).

**c)** Seller and Buyer recognize the risks inherent in ship to ship operations and that the decision to proceed with such operations is in the sound discretion of the Masters of the vessels involved. It therefore is agreed that:

   **i)** Buyer assumes all liability for any loss or damage to Buyer's Vessel or injury to the crew thereon caused by any condition of the Bunker Tanker or any fault of the Master or crew of the Bunker Tanker and Buyer shall indemnify and defend Seller against all such liability.

   **ii)** Seller assumes all liability for any loss or damage to the Bunker Tanker or injury to the crew thereon caused by any condition of Buyer's Vessel or any fault of the Master or crew of Buyer's Vessel and Seller shall indemnify and defend Buyer against all such liability.

### 13. Force Majeure

Neither party hereto shall be responsible for any loss, damage, delay or failure in performance under this Contract resulting from an act of God, or the port or area of delivery being affected by war, civil commotion, riot, quarantine, strike, stoppage, lock-out, arrest, restraint of princes, rulers and people, piracy, acts of terrorism or any other event whatsoever which is beyond the control of Seller and cannot be avoided or guarded against by the exercise of ordinary care.

### 14. Safety and the Environment

**a)** In the event of any spillage (which for the purpose of this Clause shall mean any leakage, escape, spillage or overflow of the Marine Fuels) causing or likely to cause pollution occurring at any stage of the bunkering operation, the Buyers and the Sellers shall jointly, and regardless as to whether the Buyers or the Sellers are responsible, immediately take such actions as are reasonably necessary to effect clean up and which shall always be conducted in accordance with such local laws and regulations which may compulsorily apply.

**b)** Where it is a compulsory requirement of the law of the port or place of delivery of the Marine Fuels that the Sellers shall have in place their own oil spill contingency plans, the Sellers shall ensure that valid oil spill contingency plans approved by the relevant authorities are in effect to the extent that is so required.

**c)** The Sellers hereby guarantee payment of and/or agree to indemnify and hold the Buyers harmless for any claims, losses, damages, expenses, penalties or other liabilities incurred by the Buyers under the United States

Monjasa Group
Strevelinsvej 34
DK-7000 Fredericia
www.monjasa.com

Tel: +45 70 260 230
Fax: +45 70 230 233
denmark@monjasa.com

Page 4 of 5



MONJASA

*General Terms and Conditions*
*Monjasa Group*

Oil Pollution Act of 1990, or other state, national or international oil pollution legislation, as a result of any spillage occurring whilst the Marine Fuels are being transported directly or indirectly to or from the Vessel's bunker manifold except to the extent that such spillage is caused by any fault on the part of the Buyers. The Buyers shall similarly indemnify the Sellers where any such spillage occurs once risk in the Marine Fuels has passed to the Buyers.

d) The Sellers shall use their best endeavours to ensure that the bunker supplying company is fully insured for oil spill liabilities as required by statutory rules or regulations. Proof and conditions of such coverage, established by the bunker supplying company shall be made available to the Buyers at their request, as soon as practically possible.

e) The Buyers hereby advise the Sellers that they enforce a company drug and alcohol policy on board their vessels, whereby the Sellers' personnel must not be intoxicated at any time on board. It is understood and agreed that the selling, possession, distribution, use or being under the influence of any controlled substance or dangerous drugs other than those medically prescribed is prohibited.

f) The Sellers hereby advise the Buyers that they enforce a company drug and alcohol policy in their facilities and on board their vessels, which the Buyers' personnel must comply with while in such facilities or on board such vessels. It is understood and agreed that the selling, possession, distribution, use or being under the influence of alcohol or any controlled substance or dangerous drugs other than those medically prescribed is prohibited.

**15. Severability**

If any provision of this Contract shall be held invalid, the invalidity does not affect other provisions of this Contract which can be given effect without the invalid provision, and to this end the provisions of this Contract are severable.

**16. Dispute Resolution**

This Contract shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and any dispute arising out of or in connection with this Contract shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purposes of enforcing any award, judgement may be entered on an award by any court of competent jurisdiction. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc. In cases where neither the claim nor any counterclaim exceeds the sum of US$50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc. current at the time when the arbitration proceedings are commenced. The arbitrators shall be commercial men and/or familiar with shipping matters.

This agreement to arbitrate is without prejudice to Seller's right to use any and all legal process to obtain security for its claims in the United States and/or anywhere in the world pending resolution of the merits of its claim in arbitration.

*These General Terms and Conditions shall remain applicable to any transaction between the Seller and the Buyer - including their fleet of vessels whether disponed, managed, chartered or owned.*

Monjasa Group
Strevelinsvej 34
DK-7000 Fredericia
www.monjasa.com

Tel:  +45 70 260 230
Fax: +45 70 230 233
denmark@monjasa.com

Page 5 of 5



# EXHIBIT C

 **Oil Chart**
International

# BUNKER DELIVERY NOTE

| For custom purposes only:<br>Entrepot E: BE-B-2694<br>Voorafgaand document: zie voorraadadministratie<br>Belastingentrepot BE1A000003101 | Vereenvoudigde Uitvoer no:<br>Regeling 3171<br>Regeling 9500 | BDN nr: S0131328 |
| --- | --- | --- |

Received for use as bunkers in international waters on board

MV - S/S: C.LIPPER...BELLE.................................   Delivery date: ..19..05..13.......................

IMO Nr: 961.5119...............................................   Port: ..ANTWERP..... Berth: ...................

Flag: ...PANAMA..................................................   Delivery facility:   BARGE / ~~TRUCK~~

**For account of: MASTER AND/OR OWNERS AND/ OR CHARTERERS AND/OR OPERATORS**

| ANALYSIS | Fuel Oil   LS | Fuel Oil   HS | Gasoil |
| --- | --- | --- | --- |
| Density at 15 °C (kg/m3) | | 0,9907 | |
| Kinematic Viscosity, CST (Max) | @ 50 °C | 378   @ 50 °C | @ 40 °C |
| Flash Point Above ° C | °C | 60   °C | °C |
| Sulphur content (% m/m) | % | 3,0   % | % |
| Water | % | 0,4   % | % |
| **METRIC TONS** | | 405,385 | |
| **LITERS NET @ 15 °C** | | 459,190 | |
| Commenced pumping | | 08.00 | |
| Completed pumping | | 11.55 | |
| Bargename / ~~Truck ID~~ + Reg nr | | VANQUISH | |

Sampling method:   Continuous drip sampling: (YES) / NO          SDS received: (YES) / NO
Samples were taken, sealed and distributed as follows:

| Sample seal number supplier | B | B A 473178 | B |
| --- | --- | --- | --- |
| Sample seal number supplier | B | B A 473143 | B |
| Sample seal nr seagoing vessel | V | V A 473075 | V |
| Marpol Annex VI sample seal nr | V | V A 473126 | V |

Fuel Oil supplied is in conformity with regulation 14 (1) or (4)(a) and regulation 18(1) of ANNEX VI to MARPOL 73/78
**Samples drawn and delivered in presence chief-engineer or other ship's representative.**

| No disclaimer stamp of any type or form will be accepted on this bunkering certificate, nor, should any such stamp be applied, will alter, change, or waive sellers/suppliers lien against the vessel or waive their vessel's ultimate responsibility and liability for the debt incurred through this transaction. | **MASTER:** ...............................................<br><br>**Chief - Engineer:**...................................... |
| --- | --- |

Sign. Suppl. Representative:

all our activities are subject to the general terms and conditions deposited at the authorized registry office of finances in Antwerp on March, 5th,2003 plus latest amendments

Plantinkaai 13 • 2000 Antwerpen - Belgium - Tel : +32 / 2 32 52 33 - Fax +32 / 2 33 07 43 • oilchart@oilchart.com



# BUNKER DELIVERY NOTE

| For custom purposes only: | |
|---|---|
| Entrepot E: BE-B-2694 | Vereenvoudigde Uitvoer no: |
| Voorafgaand document: zie vooraadadministratie | Regeling 3171 |
| Belastingentrepot BE1A000003101 | Regeling 9500 |
| | BDN nr: **5013/328** |

Received for use as bunkers in international waters on board

**MV - S/S:** CLIPPER BELLE                **Delivery date:** 19 6 2013

**IMO Nr:** 961519                **Port:** KALLO   **Berth:** 11.25

**Flag:** PANAMA                **Delivery facility:** BARGE / TRUCK

**For account of: MASTER AND/OR OWNERS AND/ OR CHARTERERS AND/OR OPERATORS**

| ANALYSIS | Fuel Oil   LS | Fuel Oil   HS | Gasoil |
|---|---|---|---|
| Density at 15 °C (kg/m3) | 0,9900 | | |
| Kinematic Viscosity, CST (Max) | 380   @ 50 °C | @ 50 °C | @ 40 °C |
| Flash Point Above ° C | 60   °C | °C | °C |
| Sulphur content (% m/m) | 0.97   % | % | % |
| Water | 0 3   % | % | % |
| **METRIC TONS** | 100.152 | | |
| **LITERS NET @ 15 °C** | 101.164 | | |
| Commenced pumping | 15.25 | | |
| Completed pumping | 16.25 | | |
| Bargename / Truck ID + Reg nr | VERO. | | |

npling method: SABA      Continuous drip sampling:  YES / NO                SDS received:   YES/NO
Samples were taken, sealed and distributed as follows:

| | | | |
|---|---|---|---|
| Sample seal number supplier | B 0492031 | B | B |
| Sample seal number supplier | B 0492236 | B | B |
| Sample seal nr seagoing vessel | V 0492126 | V | V |
| Marpol Annex VI sample seal nr | V 0492359 | V | V |

Fuel Oil supplied is in conformity with regulation 14 (1) or (4)(a) and regulation 18(1) of ANNEX VI to MARPOL 73/78
**Samples drawn and delivered in presence chief-engineer or other ship's representative.**

No disclaimer stamp of any type or form will be accepted on this bunkering certificate, nor, should any such stamp be applied, will alter, change, or waive sellers/suppliers lien against the vessel or waive their vessel's ultimate responsibility and liability for the debt incurred through this transaction.

**MASTER:** ..............................................................

**Chief - Engineer:** ..................................................

Sign. Suppl. Representative:

S.V.

all our activities are subject to the general terms and conditions deposited at the authorized registry office of finances in Antwerp on March, 5th,2003 plus latest amendments

Plantinkaai 13 · 2000 Antwerpen · Belgium · Tel : +32 3 232 52 34 · Fax : +32 3 233 57 45 · info@oilchart.com



# Oil Chart

International

# BUNKER DELIVERY NOTE

| For custom purposes only: | |
|---|---|
| Entrepot E: BE-B-2694 | Vereenvoudigde Uitvoer no: |
| Voorafgaand document: zle vooraadadministratie | Regeling 3171 |
| Belastingentrepot BE1A000003101 | Regeling 9500 |
| | BDN nr: Se 131328 |

Received for use as bunkers in international waters on board

MV - S/S: CLIPPER BELLE          Delivery date: 19 5 2013

IMO Nr: 9615119          Port: KALLO   Berth: 1332

Flag: PANAMA          Delivery facility: BARGE / TRUCK

## For account of: MASTER AND/OR OWNERS AND/ OR CHARTERERS AND/OR OPERATORS

| ANALYSIS | Fuel Oil   LS | Fuel Oil   HS | Gasoil |
|---|---|---|---|
| Density at 15 °C (kg/m3) | | | 0.8890 |
| Kinematic Viscosity, CST (Max) | @ 50 °C | @ 50 °C | 3 8 @ 40 °C |
| Flash Point Above ° C | °C | °C | 60 °C |
| Sulphur content (% m/m) | % | % | 0 09 % |
| Water | % | % | 0 1 % |
| **METRIC TONS** | | | 30.020 |
| **LITERS NET @ 15 °C** | | | 33.768 |
| Commenced pumping | | | 16.50 |
| Completed pumping | | | 17.05 |
| Bargename  / Truck ID + Reg nr | | | VERDI 06105135 |

npling method:   SABA   Continuous drip sampling:   YES / NO          SDS received:   YES/NO
Samples were taken, sealed and distributed as follows:

| Sample seal number supplier | B | B | B 0493111 |
|---|---|---|---|
| Sample seal number supplier | B | B | B 0493106 |
| Sample seal nr seagoing vessel | V | V | V 0493067 |
| Marpol Annex VI sample seal nr | V | V | V 0492261 |

Fuel Oil supplied is in conformity with regulation 14 (1) or (4)(a) and regulation 18(1) of ANNEX VI to MARPOL 73/78
**Samples drawn and delivered in presence chief-engineer or other ship's representative.**

| No disclaimer stamp of any type or form will be accepted on this bunkering certificate, nor, should any such stamp be applied, will alter, change, or waive sellers/suppliers lien against the vessel or waive their vessel's ultimate responsibility and liability for the dept incurred through this transaction. | MASTER: .................................................... |
|---|---|
| | Chief - Engineer: .................................................... |

Sion. Suppl. Representative:

all our activities are subject to the general terms and conditions deposited at the authorized registry office of finances in Antwerp on March, 5th,2003 plus latest amendments

Plantinkaal 13 - 2000 Antwerpen - Belgium - Tel  +32 3 232 52 34 - Fax  +32 3 233 57 45 - info@oilchart.com



# **BUNKER DELIVERY NOTE**

| For custom purposes only: | Vereenvoudigde Uitvoer no: | |
|---|---|---|
| Entrepot E: BE-B-2694 | Regeling 3171 | |
| Voorafgaand document: zie voorraadadministratie | Regeling 9500 | |
| Belastingentrepot BE1A000003101 | | BDN nr: So131 395 |

Received for use as bunkers in international waters on board

MV - S/S: _CLIPPER BELLE_          Delivery date: _22-05-2013_

IMO Nr: _9615119_          Port: _ANTWERP_   Berth: _1287_

Flag: _PANAMA_          Delivery facility:   BARGE / ~~TRUCK~~

**For account of: MASTER AND/OR OWNERS AND/ OR CHARTERERS AND/OR OPERATORS**

| ANALYSIS | Fuel Oil   LS | | Fuel Oil   HS | | Gasoil | |
|---|---|---|---|---|---|---|
| Density at 15 °C (kg/m3) | | | 0,990 l | | | |
| Kinematic Viscosity, CST (Max) | | @ 50 °C | 377 | @ 50 °C | | @ 40 °C |
| Flash Point Above ° C | | °C | 60 | °C | | °C |
| Sulphur content (% m/m) | | % | 2,7 | % | | % |
| Water | | % | 0,3 | % | | % |
| **METRIC TONS** | | | 50.298 | | | |
| **LITERS NET @ 15 °C** | | | 50.796 | | | |
| Commenced pumping | | | 1240 | | | |
| Completed pumping | | | 1315 | | | |
| Bargename / ~~Truck nr~~ + Reg nr | | | DELFSHAVEN | 02327505 | | |
| Sampling method: Continuous drip sampling: (YES) / NO | | | | | SDS received: YES/NO | |
| Samples were taken, sealed and distributed as follows: | | | | | | |
| Sample seal number supplier | B | | B A0486776 | | B | |
| Sample seal number supplier | B | | B A0488157 | | B | |
| Sample seal nr seagoing vessel | V | | V A0486615 | | V | |
| Marpol Annex VI sample seal nr | V | | V A0488160 | | V | |

Fuel Oil supplied is in conformity with regulation 14 (1) or (4)(a) and regulation 18(1) of ANNEX VI to MARPOL 73/78
**Samples drawn and delivered in presence chief-engineer or other ship's representative.**

No disclaimer stamp of any type or form will be accepted on this bunkering certificate, nor, should any such stamp be applied, will alter, change, or waive sellers/suppliers lien against the vessel or waive the r vessel's ultimate responsibility and liability for the debt incurred through this transaction.

MASTER: ......................................................

Chief - Engineer ..............................   DANILO P. DEGARAMA

Sign. Suppl. Representative:
**OILCHART INTERNATIONAL N.V.**
Plantinkaai 13
B-2000 ANTWERP

all our activities are subject to the general terms and conditions deposited at the authorized registry office of finances in Antwerp on March, 5th,2003 plus latest amendments

# EXHIBIT D



**MONJASA**

Bunkering knowledge

| | |
|---|---|
| **INVOICE #** | 47784 |

M/V CLIPPER BELLE and/or master and/or
owners and/or charterers and/or
managers and/or operators and/or
STX Corporation Co., Ltd
STX Namsantower
631 Namdaemunno 5-GA, Jung Gu
100-803 - Seoul
Korea (South)

| | |
|---|---|
| Invoice Date | 23-05-2013 |
| **Delivery Date** | **19-05-2013** |
| Your Ref | Yoon-Jin Hwang |
| Your VAT# | 6098101917 |

We hereby debit you concerning CLIPPER BELLE (imo: 9615119) delivered at Antwerp as follows:

| Product Description | Quantity | Unit | Price/Unit | Total |
|---|---|---|---|---|
| Ifo-380cst RMG380 3,5% | 405,3850 | Mts | 580,00 | 235.123,30 |
| Ifo-380cst RMG380 1,0% | 100,1520 | Mts | 610,00 | 61.092,72 |
| MGO DMA 0,1% | 30,0200 | Mts | 826,00 | 24.796,52 |

| | |
|---|---|
| **Total amount due in USD (Free of VAT)** | **321.012,54** |

*Remark:*
*Bunker Receipt(s) enclosed.*

**PAYMENT MUST BE RECEIVED IN FULL BEFORE OR ON DUE DATE AND
WITHOUT ANY DEDUCTIONS. ALL BANK CHARGES ARE FOR BUYER'S ACCOUNT.**

**Payment should be instructed from you no later than: 16-06-2013**

For late payment, a monthly interest of 2% per month will apply.
The interest will be calculated for each overdue day.

| Please pay to: | Beneficiary | Monjasa A/S | S.W.I.F.T | NDEADKKKXXX |
|---|---|---|---|---|
| | Reference | Invoice no. 47784 | IBAN | DK80 2000 5005 9915 38 |
| | Bank | Nordea Bank Danmark A/ | Bank slip to fax | +45 70 260 233 |

Please scan a copy of your bank slip and email it to accounts@monjasa.com or fax it to +45 70 260 233

In case of questions, you are welcome to contact our accounts department on phone +45 70 260 230

| | | | |
|---|---|---|---|
| Monjasa A/S | | Phone : | +45 70 260 230 |
| Strevelinsvej 34 | | Fax   : | +45 70 260 233 |
| 7000 Fredericia, DK | VAT no. 26480531 | Email : | denmark@monjasa.com |



|                                  | INVOICE #      | 47973          |
|----------------------------------|----------------|----------------|

M/V CLIPPER BELLE and/or master and/or
owners and/or charterers and/or
managers and/or operators and/or
STX Corporation Co., Ltd
STX Namsantower
631 Namdaemunno 5-GA, Jung Gu
100-803 - Seoul
Korea (South)

| | |
|---|---|
| Invoice Date | 03-06-2013 |
| **Delivery Date** | **21-05-2013** |
| Your Ref | Yoon-Jin Hwang |
| Your VAT# | 6098101917 |

We hereby debit you concerning CLIPPER BELLE (imo: 9615119) delivered at Antwerp as follows:

| Product Description | Quantity | Unit | Price/Unit | Total |
|---|---|---|---|---|
| Ifo-380cst RMG380 3,5% | 50,2980 | Mts | 609,00 | 30.631,48 |

| Total amount due in USD (Free of VAT) | 30.631,48 |
|---|---|

*Remark:*
*Bunker Receipt(s) enclosed.*

**PAYMENT MUST BE RECEIVED IN FULL BEFORE OR ON DUE DATE AND
WITHOUT ANY DEDUCTIONS. ALL BANK CHARGES ARE FOR BUYER'S ACCOUNT.**

**Payment should be instructed from you no later than: 18-06-2013**

For late payment, a monthly interest of 2% per month will apply.
The interest will be calculated for each overdue day.

| Please pay to: | Beneficiary | Monjasa A/S | S.W.I.F.T | NDEADKKKXXX |
|---|---|---|---|---|
| | Reference | Invoice no. 47973 | IBAN | DK80 2000 5005 9915 38 |
| | Bank | Nordea Bank Danmark A/ | Bank slip to fax | +45 70 260 233 |

Please scan a copy of your bank slip and email it to accounts@monjasa.com or fax it to +45 70 260 233

In case of questions, you are welcome to contact our accounts department on phone +45 70 260 230

| | | | |
|---|---|---|---|
| Monjasa A/S | | Phone : | +45 70 260 230 |
| Strevelinsvej 34 | | Fax : | +45 70 260 233 |
| 7000 Fredericia, DK | VAT no. 26480531 | Email : | denmark@monjasa.com |